IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **MICHAEL KAPLAN**, an individual, on behalf of himself and all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>**COMEDY PARTNERS**, a New York general partnership,<br><br>  Defendant. | Case No: **22-CV-09355**<br><br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

1

Plaintiff Michael "Myq" Kaplan ("Plaintiff"), on behalf of himself and all others similarly situated, alleges as follows upon personal knowledge as to his own conduct and on information and belief as to all other matters based on an investigation by counsel, such that each allegation has evidentiary support or is likely to have evidentiary support upon further investigation:

## NATURE OF THE ACTION

1. Defendant Comedy Partners, a subsidiary of Paramount Global, runs the network television channel "Comedy Central" and the record label "Comedy Central Records," the latter through which Defendant produces and distributes comedy record albums. Since its inception in 2002, Comedy Central Records ("CCR") has produced over 200 comedic record albums and helped launch the careers of several big-name comedians.

2. Plaintiff and the Class Members[1] are comedians who have released record albums of certain of their live comedic performances through CCR (the "Works"). Plaintiff and the Class Members granted licenses to Defendant to exploit (*i.e.,* use, distribute, sell, transfer, market, etc.) their Works via digital transmission (*i.e.,* transmissions over the Internet, telephone, satellite, cable, wire, or through the air, etc.) in exchange for payment of a share of all revenues received by or credited to Defendant attributable to such exploitation (the "Licensing Agreements").

3. As contemplated by the Licensing Agreements, Defendant has caused Plaintiff's and the Class Members' Works to be distributed to various Digital Service Providers ("DSPs") which publicly perform the Works on their platforms via digital transmission. One of the DSPs to digitally perform Plaintiff's and the Class Members' Works is SiriusXM Radio ("SiriusXM").

---

[1] Unless otherwise noted term "Class Members" shall collectively refer to all members of the Rule 23(b)(2) and Rule 23(b)(3) Classes as defined herein.

4.      For many years, SiriusXM paid royalties for digital performances of works produced under the CCR record label in accordance with the statutory licensing provisions of the Digital Performance in Sound Recordings Act of 1995 ("DPSRA") (17 USC §114(f), (g)).

5.      In or about May of 2013, Defendant executed a secret direct licensing deal with SiriusXM through which SiriusXM would pay royalties for its digital performances of works produced under the CCR record label directly to Defendant as opposed to SoundExchange, Inc. ("SoundExchange"), the non-profit collective designated by Congress to administer digital performance royalties under DPSRA.

6.      For some time after the deal was inked, Plaintiff and the Class Members were paid royalties for digital performances of their Works on SiriusXM at the statutory licensing rates established pursuant to DPSRA. Defendant in fact represented to Plaintiff and the Class Members that, as part of the SiriusXM deal, they would continue to be paid royalties for performance of their Works on SiriusXM at the statutory licensing rate. In the years to follow, however, Defendant has engaged in conduct that has significantly reduced the amount and portion of revenues payable to Plaintiff and the Class Members for performances of their Works on SiriusXM.

7.      Plaintiff thus brings this nationwide class action on behalf of himself and similarly situated Class Members for Defendant's failure to properly account to and pay Plaintiff and the Class Members their contractual shares of all revenues received by or credited to Defendant from the exploitation of Plaintiff's and the Class Members' Works on SiriusXM, and for Defendant's bad faith conduct toward Plaintiff and the Class Members relating to and arising from Defendant's dealings with SiriusXM.

## VENUE AND JURISDICTION

8. This Court has jurisdiction over the subject matter of this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which provides for original jurisdiction of the federal courts of any class action in any which any member of the plaintiff Class is a citizen of a state different from any Defendant, and in the matter in controversy exceeds the aggregate the sum of $5,000,000, exclusive of interest and costs.

9. The total claims of the Class Members in this action exceed $5,000,000 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

10. Plaintiff is a citizen of New York and Defendant is a citizen of, and headquartered in, New York. Plaintiff alleges on information and belief that more than two-thirds of all members of the proposed Class in the aggregate are citizens of a state other than New York, where this action is originally being filed. Diversity of citizenship thus exists under CAFA, as required by 28 U.S.C. §§ 1332 (d)(2)(A). Plaintiff further alleges on information and belief that the total number of members of the proposed Class is greater than 100, as required by 28 U.S.C. § 1332(d)(5)(B).

11. Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) because, as set forth herein, Defendant conducts business in, and may be found in, this District, and the Licensing Agreements between Defendant and Plaintiff and the Class members contain venue provisions requiring that any dispute arising thereunder be filed in courts within this judicial jurisdiction.

## THE PARTIES

**Plaintiff**

12. Plaintiff is an individual who resides in Brooklyn, Kings County, New York. Plaintiff is a comedian who professionally is known as "Myq Kaplan." Plaintiff released a comedic

4

record album through CCR, entitled "Myq Kaplan: Meat Robot." In January 2013, Plaintiff executed a Licensing Agreement with Defendant that sets forth the royalty compensation to which Plaintiff is entitled for Defendant's digital exploitation of the album. A true and correct copy of the Licensing Agreement is attached hereto as Exhibit "1".

**Defendant**

13. Defendant Comedy Partners is a New York general partnership and a subsidiary of Paramount Global which has its principal place of business and corporate headquarters located at 1515 Broadway, New York, New York 10036. Comedy Partners operates the network television channel "Comedy Central" and the record label "Comedy Central Records" ("CCR") through which Comedy Partners produces comedy albums.

14. At all relevant times, Defendant was and continues to be in several lines of business in the entertainment field, including the business of exploiting the sound recordings of comedic performances. Defendant's exploitation includes, but is not limited to, producing, manufacturing, distributing, licensing, and selling these recordings. Such exploitation is done through Defendant directly or its record label, CCR, which is the alter ego, agent, or representative of Defendant.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

**A. The Licensing Agreements Require Defendant to Account for and Pay Royalties Based on all Revenues Attributable to Exploitation by Digital Transmission.**

15. Plaintiff and all members of the Class have, or had, a contractual relationship with Defendant through which Defendant was granted the right to digitally exploit sound recordings of certain of Plaintiff's and the Class Members' comedic performances in exchange for the payment of a share of all revenues received by or credited to Defendant from such exploitation.

5

16. As to Plaintiff specifically, he executed a Licensing Agreement with Defendant on January 25, 2013, through which he granted Defendant the right to exploit via digital transmission the sound recording of Plaintiff's performance at Acme Comedy Club in Minneapolis, Minnesota on September 14 and 15, 2012, entitled "Myq Kaplan: Meat Robot." In exchange for such rights, Defendant agreed to account to and pay Plaintiff 50% of Net Receipts as defined in the Licensing Agreement. (*See* Exhibit 1 at ¶¶ 1, 2, & 5.)

17. On information and belief, the Licensing Agreements between Defendant and the Class Members contain the same, if not, identical, language regarding the method of paying and accounting for royalties due to the comedians from Defendant's digital exploitation of their Works.

**B. Defendant Has Improperly and Unjustifiably Withheld Royalties Due and Owed for Digital Performances of Plaintiff's and the Class Members' Works on SiriusXM.**

18. Defendant exploited Plaintiff's and the Class Members' Works, in part, by causing the Works to be distributed to DSPs to digitally perform the Works on the DSPs' platforms. One of the DSPs that digitally performs Plaintiff's and the Class Members' Works is SiriusXM.

19. Under DPSRA, DSPs are required to pay royalties for certain digital performances of copyrighted works on their platforms. In the absence of a direct licensing agreement between a DSP and a copyright owner, a DSP's digital performance of a copyrighted work is subject to DPSRA's statutory licensing provisions, codified at 17 USC §114(f) & (g). In such cases, a DSP pays royalties based on federally-approved licensing rates to SoundExchange. SoundExchange then accounts for and pays 50% of the royalties received to the copyright owner and 45% of the royalties received to the featured artists of the copyrighted work. Where there is a direct licensing agreement between a DSP and a copyright owner, royalties are paid at negotiated rates and the

obligation to collect, account for, and pay royalties to featured artists falls to the copyright owner.

20. Up to and through roughly the fourth quarter of 2013, SiriusXM paid royalties for its digital performances of records produced under the CCR label in accordance with DPSRA's statutory licensing provisions. Per those provisions, SiriusXM paid royalties owed to SoundExchange, which distributed 50% of the royalties received to Defendant, as the copyright owner of those works, and 45% of the royalties the featured artists of those works.

21. In or about May of 2013, however, Defendant secretly negotiated and signed a deal with SiriusXM through which the royalties owed by SiriusXM for its performances of Plaintiff's and the Class Members' Works would no longer be subject to statutory licensing under DPSRA.

22. The details of this deal have been kept hidden by Defendant. In fact, Defendant did not notify Plaintiff or the Class Members of the deal until nearly two years after it was executed, and even then, knowingly and intentionally misrepresented the effect of the deal upon the royalties that would be paid to Plaintiff and the Class Members for performances of their Works on SiriusXM.

23. From roughly the first quarter of 2014 through the fourth quarter of 2017, the royalties paid by Defendant to Plaintiff and the Class Members for performances of their Works on SiriusXM continued to be based upon DSRPA's statutory licensing rates. However, beginning in or around the first quarter of 2018, the royalties paid by Defendant to Plaintiff and the Class Members for performances of their Works on SiriusXM has sharply declined, despite the number of such performances remaining stable.

24. Since 2018, the royalties paid to Plaintiff and the Class Members for performances of their Works on SiriusXM have dwindled down to 2 - 4% of what they previously received and

would receive on a per-performance basis if paid in accordance with DPSRA's statutory licensing rates. Further, Defendant's royalty statements have been devoid of any information to enable Plaintiff and the Class Members to evaluate the adequacy of the royalties paid for performances of their Works on SiriusXM, such as the number of performances corresponding to the royalties.

25. In accord with the Licensing Agreements, Defendant not only had an implied duty to Plaintiff and the Class Members to act in good faith and to not unduly marginalize or reduce the royalties owed by SiriusXM for exploitation of Plaintiff's and the Class Members' Works, but it also has a contractual obligation to properly and accurately account for and pay Plaintiff and the Class Members their full share of all revenues received by or credited to Defendant attributable to exploitation of Plaintiff's and the Class Members' Works on SiriusXM.

26. Defendant confirmed its agreement and obligation to pay such royalties in the following notice sent to Plaintiff and Class Members with their royalty statements for the third and fourth quarters of 2014:

> **SiriusXM**
>
> Comedy Central Records signed a direct deal with SiriusXM radio in 2013, establishing a channel and adding incremental plays of yours and all CC Records artists into rotation. As part of the deal, we will be distributing all revenue that was previously reported to SoundExchange at the same rate, represented on your statements. Please note the amount on this statement includes three quarters, and subsequent statements will include two.

A true and correct copy of a June 11, 2015 email from Defendant to Plaintiff containing this notice is attached as Exhibit "2." On information and belief, the other Class Members received the same or similar notices from Defendant on or around June 11, 2015.

27. Through the foregoing notice, Defendant represented to Plaintiff and the Class

8

Members that they would continue to be paid royalties for performances of their Works on SiriusXM at the same licensing rates established pursuant to DPSRA.

28. Defendant's course of conduct and representations to Plaintiff and the Class Members also created an implied right under the Licensing Agreements for Plaintiff and the Class Members to be paid royalties for digital performances of their Works on SiriusXM at the same per-performance royalty rate provided under DPSRA's statutory licensing provisions. Defendant has breached those duties and obligations.

29. As a result of Defendant's systematic and continuous breach of its obligations to Plaintiff and the Class Members, coupled with Defendant's bad faith conduct regarding the SiriusXM deal, Defendant has caused substantial damages to Plaintiff and the Class Members through the wrongful withholding of a substantial sums of money owed to Plaintiff and the Class.

**C. Defendant Is Equitably Estopped from Asserting a Statute of Limitations Defense.**

30. Defendant's conduct, as alleged herein, prevented Plaintiff and the Class Members from filing suit until the present. On information and belief, Defendant and SiriusXM entered into a secret agreement in or around May of 2013 whereby Defendant permitted Sirius XM to exploit Plaintiff's and the Class Members' Works without their knowledge. Due to the secret nature of this agreement and conduct by Defendant, Plaintiff and the Class Members did not and could not know that they had a potential claim against Defendant for this conduct. Defendant intentionally kept the agreement with, and revenues generated from, SiriusXM a secret to avoid paying royalties to Plaintiff and the Class Members based on all revenues generated under the agreement.

31. At all relevant times, Defendant knew that it was improperly collecting revenues to which it was not entitled and failing to account to and pay Plaintiff and the Class Members royalties

they were owed. Defendant unduly delayed reporting to Plaintiff and the Class Members that it was collecting royalties directly from SiriusXM and thereafter did not report or account to Plaintiff and the Class Members the full amount of revenues received by or credited to Defendant for exploitations of Plaintiff's and the Class Members' Works on SiriusXM. Through these actions, Defendant purposely concealed and withheld the existence of such revenues from Plaintiff and the Class Members in violation of Defendant's contractual obligations to them. Plaintiff and the Class Members reasonably relied on Defendant's royalty statements and reports to their detriment. Plaintiff and the Class Members did not know, and could not reasonably know, that Defendant was and has been failing to report, account for, and pay royalties based on all revenues received by and credited to it for exploitations of Plaintiff's and the Class Members' Works on SiriusXM.

## CLASS ACTION ALLEGATIONS

32. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on his own behalf and on behalf of the following "Classes" defined as follows:

> **Rule 23(b)(3) Class**
>
> All persons and entities in the United States, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators who are or were parties to licensing agreements with Comedy Partners and any of its predecessors and subsidiaries that does not contain a blanket license exclusion and whose works have been publicly performed by digital audio transmission on SiriusXM Radio pursuant to such licensing agreements.
>
> **Rule 23(b)(2) Class**
>
> All persons and entities in the United States, their agents, successors in interest, assigns, heirs, executors, trustees, and administrators who are parties to licensing agreements with Comedy Partners and any of its predecessors and subsidiaries that does not contain a blanket license exclusion and whose works are currently eligible to

        be publicly performed by digital audio transmission on SiriusXM Radio pursuant to such licensing agreements.

33. Plaintiff reserves the right to redefine the Classes as the facts or evidence warrants.

34. This action is properly maintainable as a class action.

35. The Classes for whose benefit this action is brought is so numerous that joinder of all Class Members is impracticable. While Plaintiff does not presently know the exact number of Class Members, it is likely that there are hundreds of Class Members due to the extent of Defendant's catalog, and those Class Members can be determined and identified through Defendant's records and, if necessary, other appropriate discovery as to each of the Classes.

36. There are questions of law and fact common to Plaintiff and the Classes. These common questions of law and fact include, but are not limited to:

    a. Whether Defendant breached the Licensing Agreements by, *inter alia*, withholding and failing to account for and pay royalties based on all revenues received by or credited to Defendant for performances of Plaintiff's and the Class Members' Works on SiriusXM;

    b. Whether Defendant breached its duty of good faith and fair dealing by, *inter alia*, striking a deal with SiriusXM that inured solely to the benefit of Defendant at the detriment of Plaintiff and the Class Members;

    c. Whether declaratory and injunctive relief are appropriate to curtail Defendant's conduct as alleged herein on behalf of the Rule 23(b)(2) Class Members;

    d. Whether interest should be paid on any withheld royalties due to Plaintiff and the Rule 23(b)(3) Class members under the Licensing Agreements;

    e. Whether Defendant has been unjustly enriched by its actions as to members of the of the 23(b)(3) Class;

    f. Whether Plaintiff and the Rule 23(b)(3) Class members have been damaged by Defendant's actions or conduct; and

g.      the proper measure of damages for the Rule 23(b)(3) Class Members.

37.     Plaintiff's claims are typical of the claims of the Classes. Defendant's common course of conduct in violation of law and the Licensing Agreements as alleged herein has caused Plaintiff and the Class Members to sustain the same or similar injuries. Plaintiff's claims are thereby representative of and coextensive with the claims of the Classes.

38.     Plaintiff is a member of the Classes, does not have any conflicts of interest with other proposed Classes, and will prosecute the case vigorously on behalf of the Classes. Plaintiff's counsel is competent and experienced in litigating complex class actions, including those involving the entertainment industry. Plaintiff will fairly and adequately represent and protect the interests of the Classes.

39.     The Rule 23(b)(3) Class satisfies the predominance and superiority requirements of Rule 23(b)(3). As discussed above, Individual joinder of all Rule 23(b)(3) Class members is not practicable, and questions of law and fact common to the Rule 23(b)(3) Class member predominate over any questions affecting only individual members of the Rule 23(b)(3) Class. Plaintiff foresees no unusual difficulties in managing this litigation as a class action. Moreover, although each Rule 23(b)(3) Class member has been damaged and is entitled to recovery by reason of Defendant's improper practices, the injury suffered by each Rule 23(b)(3) Class member is not of such magnitude as to make the prosecution of individual actions economically feasible. Individualized litigation increases the delay and expense to all parties and the Court, whereas class action treatment will allow those similarly situated to litigate their claims in the manner most efficient and economical for the parties and the judicial system.

40.     Defendant has acted and refused to act on grounds generally applicable to the entire

Rule 23(b)(2) Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(On Behalf of Plaintiff and all Classes Against Defendant)**

41. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs, as though fully set forth herein.

42. Plaintiff and Class Members entered into Licensing Agreements with Defendant. (*See* Ex. 1.)

43. The Licensing Agreements contain provisions, both express and implied, for Plaintiff and Class Members to be paid royalties based on all monies received by or credited to Defendant for the exploitation of Plaintiff's and Class Members' Works via digital transmission, including but not limited to performances of the Works on SiriusXM.

44. Defendant participated in a uniform years-long course of conduct through which royalties paid by SiriusXM for its digital performances of Plaintiff's and Class Member's Works were paid pursuant to DPSRA's statutory licensing provisions.

45. Defendant struck a deal with SiriusXM through which SiriusXM would no longer pay royalties pursuant to DPSRA's statutory licensing provisions, and thereafter engaged in a course of conduct whereby Plaintiff and the Class Members were paid royalties for digital performances of their Works on SiriusXM based on DPSRA's statutory licensing rates. Defendant further represented to Plaintiff and Class Members that they would continue to receive royalties for digital performances of their Works on SiriusXM at the same per-performance licensing rates established pursuant to DPSRA's statutory licensing provisions.

13

46. Defendant's course of conduct with and representations to Plaintiff and Class Members created an implied contractual right under the Licensing Agreements for Plaintiff and Class Members to be paid royalties for digital performances of their Works on SiriusXM at the same per-performance royalty rate established under DPSRA's statutory licensing provisions.

47. Plaintiff and Class Members have performed their obligations under their respective Licensing Agreements by providing the services and granting the rights called for under the Agreements, and at no time did Defendant advise them that their performance was inadequate. As a result, all conditions required for Defendant's performance under the Licensing Agreements – namely, the payment of money to Plaintiff and Class Members sought herein – have occurred.

48. By reason of the allegations herein, and other acts presently unknown to Plaintiff and the Class Members, Defendant has materially breached the Licensing Agreements by failing to pay royalties to Plaintiff and Class Members based on all monies received by or credited to Defendant attributable to exploitation of their Works via digital transmission, including monies attributable to exploitation of Plaintiff's and Class Members' Works on SiriusXM and at the same per-performance royalty rates established under DPSRA's statutory licensing provisions.

49. By reason of the foregoing breaches, Plaintiff and Rule 23(b)(3) Class members have been damaged in an amount to be determined at trial.

50. Defendant's wrongful conduct is continuing and ongoing. Plaintiff and Rule 23(b)(2) Class Members have suffered, and will continue to suffer, irreparable injury for which there is no adequate remedy at law, unless Plaintiff and Class Members obtain equitable relief ordering Defendant to specifically perform, report to, and pay Plaintiff and Rule 23(b)(2) Class Members based on all monies received by or credited to Defendant attributable to exploitation of

their Works via digital transmission and at the same per-performance royalty rates established under DPSRA's statutory licensing provisions, or as otherwise may be appropriate under the law.

51. If Defendant is found to have no obligation to account to and pay Plaintiff or Class Members based on all monies received by or credited to Defendant attributable to exploitation of their Works via digital transmission and at the same per-performance royalty rates established under DPSRA's statutory licensing provisions, then Plaintiff and Class Members are entitled to judicial determination that their performances under the Licensing Agreements are excused for frustration of purpose and that the Licensing Agreements subject to termination and rescission.

## SECOND CAUSE OF ACTION
## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING
**(On Behalf of Plaintiff and all Classes Against Defendant)**

52. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs, as though fully set forth herein.

53. The Licensing Agreements contain a covenant implied by law that Defendant will act toward Plaintiff and Class Members in good faith and with fair dealing.

54. The implied covenant of good faith and fair dealing imposes upon Defendant the duty not to take any action that would deprive Plaintiff and Class Members of their rights to receive the benefits entitled to them under the Licensing Agreements, and to exercise any discretion they have under the Licensing Agreements in fairness to Plaintiff and Class Members.

55. By reason of the allegations herein, and other acts presently unknown to Plaintiff and Class Members, Defendant has breached the covenant of good faith and fair dealing implied in the Licensing Agreements and frustrated Plaintiff's and Class Members' enjoyment of their rights thereunder by, among other acts that may be uncovered upon further investigation:

a. Entering into agreements with SiriusXM on terms that are not fair, just or equitable as to Plaintiff and Class Members;

b. Entering into agreements with SiriusXM that have resulted in denial to Plaintiff and Class Members of royalties to which they are entitled under the Licensing Agreements for exploitation and performance of their Works on SiriusXM;

c. Negotiating a deal with SiriusXM Radio through which Defendant would materially benefit to the material detriment of Plaintiff and Class Members;

d. Concealing Defendant's malfeasance toward Plaintiff and Class Members by making a false representation about the effect of the SiriusXM deal upon the royalties owed to Plaintiff and Class Members under the Licensing Agreements;

e. Concealing Defendant's malfeasance toward Plaintiff and Class Members through confusing and misleading royalty statements that do not disclose the royalty rate paid by SiriusXM for its performances of Plaintiff's and Class Members' Works.

56. As a direct and proximate result of the foregoing breaches, Plaintiff and Rule 23(b)(3) Class members have been damaged in an amount to be determined according to proof at trial.

57. As a further remedy, which Plaintiff and Class Members will elect at trial, Plaintiff and Class Members are entitled to termination and recission of the Licensing Agreements.

### THIRD CAUSE OF ACTION
### MONEY HAD AND RECEIVED
(On Behalf of Plaintiff and all Rule 23(b)(3) Class Members Against Defendant)

58. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs, as though fully set forth herein.

59. Defendant received money from the revenue derived from performance royalties through its secret agreement with Sirius XM. This money was, at least in substantial part, intended for the benefit and use of Plaintiff and Rule 23(b)(3) Class Members. The money was not properly used for the benefit and use of Plaintiff and Rule 23(b)(3) Class Members and was instead wrongfully kept by Defendant.

60. Defendants is indebted to Plaintiff and Rule 23(b)(3) Class Members for their rightful share of the money had and received by Defendant during the class period for the benefit and use of Plaintiff and Rule 23(b)(3) Class Members.

### FOURTH CAUSE OF ACTION
### UNJUST ENRICHMENT
**(On Behalf of Plaintiff and all Rule 23(b)(3) Class Members Against Defendant)**

61. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs, as though fully set forth herein.

62. As a result of Defendant's acts, as set forth herein, that have deprived and continue to deprive Plaintiff and Rule 23(b)(3) Class Members of royalties to which they are entitled, Defendant has and continues to be unjustly enriched.

63. As a result, Plaintiff and Rule 23(b)(3) Class members request restitution of all monies improperly obtained by Defendant and interest thereon.

64. Since Defendant's wrongful conduct is continuing and ongoing, Plaintiff and Rule 23(b)(3) Class Members have suffered, and will continue to suffer, irreparable injury for which there is no adequate remedy at law unless Defendant is enjoined by the Court from continuing to collect such money without paying Plaintiff and Rule 23(b)(3) Class members all amounts to which they are entitled.

65. Plaintiff and Rule 23(b)(3) Class members also seek the imposition of a constructive trust for the benefit of their interests on all monies wrongfully obtained by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and Class Members, respectfully requests the following relief from the Court:

1. An order certifying the proposed Classes, designating Plaintiff as the named representative of the Classes, and designating the undersigned as Class Counsel;

2. A declaration that Defendant is responsible for accounting for, crediting to, and paying Plaintiff and Rule 23(b)(2) Class members royalties based on 100% of the revenues received by or credited to Defendant for the digital exploitation of Plaintiff's and Rule 23(b)(2) Class Members' Works;

3. A declaration that Defendant must pay Plaintiff and Rule 23(b)(2) Class Members royalties for digital performance of their Works on SiriusXM at the same per-performance royalty rates as available under DPSRA's statutory licensing provisions;

4. An order entering appropriate injunctive relief on behalf of the Plaintiff Rule 23(b)(2) Class members, including but not limited to an order permanently enjoining Defendants from retaining any percentage of such royalties unless Plaintiffs and 23(b)(2) Class Members agree thereto, and requiring Defendant account for, credit to, and pay Plaintiff and 23(b)(2) Class Members all royalties due under the Licensing Agreements;

5. An order requiring Defendant to return to Plaintiff and Rule 23(b)(3) Class Members their contractual share of all revenues collected by Defendant attributable to digital performances of Plaintiff's and Class members' Works on SiriusXM;

6. Imposition of a constructive trust on behalf of the Rule 23(b)(3) Class Members on all monies wrongfully retained by Defendant;

7. An order granting Plaintiff and the Classes an accounting;

8. An award to Plaintiff and the Rule 23(b)(3) Class Members of damages in an amount to be proven at trial;

9. An award of attorneys' fees and costs, to the Class Members as allowed by law;

10. An award of pre-judgment and post-judgment interest to the Class Members, as allowed by law; and

11. Any other and further relief as the Court deems proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury to the extent that the allegations contained herein are triable by jury under Fed. R. Civ. P. 38 and 39.

DATED: November 1, 2022

**MILLER SHAH LLP**

By _____
Laurie Rubinow, Esq.
225 Broadway, Suite 1830
New York, NY 10007
Telephone: (866) 540-5505
Facsimile: (866) 300-7367
Email: lrubinow@millershah.com

**JOHNSON & JOHNSON LLP**
Neville L. Johnson (Pro Hac Vice to be Filed)
Douglas L. Johnson (Pro Hac Vice to be Filed)
Melissa N. Eubanks (Pro Hac Vice to be Filed)
439 N. Canon Dr. Suite 200
Beverly Hills, California 90210

Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email:  njohnson@jjllplaw.com
              djohnson@jjllplaw.com
              meubanks@jjllplaw.com

**PEARSON, SIMON & WARSHAW, LLP**
Daniel L. Warshaw (Pro Hac Vice to be Filed)
Bobby Pouya (Pro Hac Vice to be Filed)
15165 Ventura Boulevard, Suite 400
Sherman Oaks, California 91403
Telephone: (818) 788-8300
Facsimile: (818) 788-8104
Email:  dwarshaw@pswlaw.com
              bpouya@pswlaw.com