# EXHIBIT A

**COMEDY PARTNERS**
**345 Hudson**
**New York, New York 10014**

Dated as of January 25, 2013

Michael Kaplan
c/o Generate
8750 Wilshire Boulevard, Suite 200
Beverly Hills, CA 90211
Attn: Dave Rath

RE:   LICENSE AGREEMENT / Myq Kaplan Digital Album

Dear Michael:

The following letter shall confirm the terms of the license agreement (the "Agreement") between Comedy Partners ("Licensee") and you, Michael Kaplan p/k/a Myq Kaplan (sometimes referred to herein as "Licensor") in connection with your license to Licensee of your live performance at Acme Comedy Club in Minneapolis, MN on September 14-15, 2012 entitled "Myq Kaplan: Meat Robot" (each a "Recording" and, collectively, the "Recordings").

1. **Grant of Rights**:  Licensor hereby irrevocably and exclusively licenses to Licensee, throughout the world, in perpetuity, the following rights (collectively, the "Rights"):

    a. the right to use, distribute, sell, transfer, market and otherwise exploit the Recordings via all mobile media (including without limitation as so-called voice tones, ringtones, ringback tones, video tones and voicemail greetings, which, with respect to the aforementioned "tones" and greetings, shall be subject to meaningful consultation with Licensor) and via Digital Transmission (as defined below), or by means of any medium or method now known or hereinafter developed that is similar or analogous to any of the foregoing, under any trademarks, trade names or labels designated by Licensee.  For purposes of this Agreement, "Digital Transmission" shall mean any digital, electronic or radio transmission, including without limitation all transmissions via the Internet (e.g., any downloading or streaming), telephone (terrestrial or mobile), satellite, cable, over wire or through the air (i.e., any "wireless" transmission);

    b. the right to edit or adapt the Recordings to conform to the technological requirements of Licensee relative to any of the media set forth in Paragraph 1.a. above;

    c. the right to use, solely in connection with Licensee's exploitation of the Recordings pursuant to Paragraph 1.a. above, any material written, created or composed by Licensor that is contained within the Recordings, or any other element of Licensor's underlying performances that is embodied on the Recordings; and

    d. the right to use, and allow others to use, Licensor's name, professional name(s), approved likeness, approved photographs, and approved biography solely in connection

      with Licensee's distribution, sale, advertising, promotion, publicity and other exploitation of the Recordings pursuant to the terms set forth herein.

    e. Licensor retains ownership of the mechanical license to material embodied in the Recordings, and all other rights in and to the material not licensed herein.

2. **Royalty**:  In full and complete consideration of the Rights granted by Licensor to Licensee hereunder (including without limitation for the Rights granted under paragraph 1.c. above, Licensee shall pay to Licensor Fifty Percent (50%) of Net Receipts (as defined below) solely attributable to Licensee's exploitation of the Recordings.  As used herein, "Net Receipts" shall mean all monies actually received by or credited to Licensee that are specifically attributable to exploitation of any of the Recordings hereunder ("Gross Receipts") less all advances, actual, verifiable, out-of-pocket direct expenses, taxes and adjustments incurred by Licensee in connection with the creation and/or exploitation of the Recording(s) and/or in connection with the collection and receipt of Gross Receipts (including, without limitation, all copyright payments, all re-use payments and any other third party payments, and any legal fees incurred in collecting such monies).  Should the Recordings be bundled with those of other artists, Licensor shall be paid on a pro-rata basis equal to that of the other artists. If any item deducted from Gross Receipts in determining Net Receipts is attributable to a Recording hereunder and to other Recordings, the amount of that item to be deducted in determining Net Receipts hereunder shall be reasonably apportioned.

3. **Intentionally Omitted**

4. **Delivery**:  Licensor shall provide Licensee with a DAT or compact disc (or other format as reasonably requested by Licensee) embodying the Recordings which is technically satisfactory for Licensee's exploitation of the Recordings as contemplated herein immediately upon full execution of this Agreement.

5. **Accounting**:

    a. Statements as to royalties payable to Licensor pursuant to Paragraph 2 hereunder shall be sent by Licensee to Licensor within ninety (90) days after the expiration of each semi-annual calendar period for the preceding six (6) month period (ending the last fiscal day of June and December) in respect of each such six-month period in which there are any transactions on which royalties are payable to Licensor.  Notwithstanding the foregoing, Licensee may, if Licensee elects, change the aforesaid time and dates in its sole discretion, provided, however, in the event of such change, statements shall be rendered to Licensor no less frequently than semi-annually.  Concurrently with the rendition of each statement, Licensee shall pay Licensor all royalties shown to be due by such statement.  All payments to Licensor shall be made to the order of:  <u>Michael Kaplan</u> and shall be sent <u>c/o Cohen Gardner LLP</u> at the following address: <u>345 N. Maple Drive, Suite 181, Beverly Hills, CA 90210, Attention: Jeff Cohen</u>.  Licensee shall be entitled to maintain a single account with respect to all Recordings subject to this Agreement.  Licensee may maintain reasonable reserves.  Licensor shall be deemed to have consented to all accountings rendered by Licensee hereunder and said accountings shall be binding upon Licensor and not subject to any objection by Licensor for any reason unless specific objection, in writing, stating the basis thereof, is given to Licensee within two (2) years after the date Licensee is deemed to have rendered the applicable statement,

and after such written objection, unless suit is instituted within three (3) years after the date Licensee is deemed to have rendered the applicable statement. Licensee shall be deemed conclusively to have rendered Licensor each statement on the date prescribed in this paragraph unless Licensor notify Licensee otherwise with respect to any particular statement within sixty (60) days after the date that Licensee has failed to render that statement.

b. Licensor shall have the right at Licensor's sole cost and expense to appoint a Certified Public Accountant who is not then currently engaged in an outstanding audit of Licensee to examine Licensee's books and records as same pertain to sales of Recordings subject hereto as to which royalties are payable to Licensor hereunder, provided that any such examination shall be for a reasonable duration, shall take place at Licensee's offices during normal business hours on reasonable prior written notice and shall not occur more than once in any calendar year. Licensor may examine books and records with respect to a particular statement only once. Should a discrepancy in accounting result in underpayment of 10% or more, Licensee shall be liable for reasonable costs incurred by Licensor for the audit, not to exceed $1,500.

6. **Representations and Warranties**:

   a. Licensor hereby represents and warrants to Licensee that:

      i. Licensor has the full right, power, legal capacity and authority to enter into this Agreement and to perform his obligations hereunder, and Licensor is under no obligation or disability by law, under any contracts or otherwise which would prevent or restrict Licensor from performing and complying with all of the terms, covenants and conditions of this Agreement;

      ii. To the best of Licensor's knowledge in the exercise of reasonable prudence and due inquiry, the grant of any Rights hereunder by Licensor and exercise thereof by Licensee do not and shall not result in any infringement of the rights or interests of any third party; and

      iii. To the best of Licensor's knowledge in the exercise of reasonable prudence and due inquiry, the Recordings contain no matter which is libelous or defamatory, and all necessary rights release wavers of the participants are fully executed.

   b. Licensee represents and warrants to Licensor that Licensee has the full right, power, legal capacity and authority to enter into and to perform this Agreement.

7. **Indemnification**:

   a. Licensor assumes liability for, and shall indemnify, defend, protect, save and hold harmless Licensee, its partners and their respective parents, subsidiary and related divisions and companies, distributors, licensees and permitted assigns, and the respective shareholders, directors, officers, employees and agents of each of the foregoing (the "Licensee Indemnified Parties") from and against any and all claims, actions, suits, costs, liabilities, judgments, obligations, losses, penalties, expenses or damages (including, without limitation, reasonable outside legal fees and expenses) of whatsoever kind and

nature imposed on, incurred by or asserted against any of the Licensee Indemnified Parties, arising out of any uncured material breach or alleged breach by Licensor of any representation or warranty or covenant made, or obligation assumed, by Licensor pursuant to this Agreement.

b. Licensee assumes liability for, and shall indemnify, defend, protect, save and hold harmless Licensor, its parent, subsidiary and related companies, grantors and permitted assigns, and the respective shareholders, director, officers, employees and agents of each of the foregoing (the "Licensor Indemnified Parties") from and against any and all third party claims, actions, suits, costs, liabilities, judgments, obligations, losses, penalties, expenses or damages (including, without limitation, reasonable outside legal fees and expenses) of whatsoever kind and nature imposed on, incurred by or asserted against any of the Licensor Indemnified Parties, arising out of any uncured material breach or alleged breach by Licensee of any representation, warranty or covenant made, or obligation assumed, by Licensee pursuant to this Agreement.

c. In order to seek or receive indemnification hereunder in cases involving third-party claims the party seeking an indemnification (the "Indemnitee"):

   i. Shall promptly notify the other (the "Indemnitor") of any claim or litigation of which it is aware to which the indemnification relates; and

   ii. With regard to any claim or litigation to which the Indemnitor itself is not a party, the Indemnitee must have afforded the Indemnitor the opportunity to participate in any compromise, settlement, litigation or other resolution or disposition of such claim or litigation.

8. **Notices**:  Except as otherwise specifically provided herein, all notices under this Agreement shall be in writing and shall be given by courier or other personal delivery, by overnight delivery by an established overnight delivery service (e.g., Federal Express or Airborne Express), or by registered or certified mail (return receipt requested) at the appropriate address below, or at a substitute address designated in a written notice sent by the party concerned to the other party hereto.

| | |
|---|---|
| TO LICENSOR: | c/o Cohen Gardner LLP<br>345 N. Maple Drive, Suite 181<br>Beverly Hills, CA 90210<br>Attention: Jeff Cohen |
| With a copy to: | Generate<br>8450 Wilshire Boulevard, Suite 200<br>Beverly Hills, CA 90211<br>Attention: Dave Rath |
| TO LICENSEE: | Comedy Partners<br>345 Hudson Street, 9th Floor<br>New York, NY 10014<br>Attention: Comedy Central Records |

    With a copy to:    Comedy Partners
                 345 Hudson Street, 9th Floor
                 New York, NY 10014
                 Attention: Counsel, Business & Legal Affairs

Notices shall be deemed given when mailed or deposited into the custody of an overnight delivery service for overnight delivery, or, if personally delivered, when so delivered, except that a notice of change of address shall be effective only from the date of its receipt. Notwithstanding all of the foregoing, Licensee may send royalty statements and payments to Licensor by first class mail.

9. **Assignment**: Licensee shall have the right to assign this agreement, and any of its rights hereunder. Licensor shall not assign this agreement or any of its rights hereunder without Licensor's consent.

10. **Physical Copies**: At Licensor's reasonable request and subject to Licensee's approval, not to be unreasonably withheld, Licensee shall manufacture and provide to Licensor at Licensee's standard artist rate (which for standard single CDs shall be four dollars [$4.00] per unit) physical royalty-exempt copies of the Recordings (each a "Hard Copy", and, collectively, the "Hard Copies"), plus any actual shipping and handling, solely for sale on Licensor's personal website(s) that are under the control of and/or owned and operated by Licensor and at Licensor's live performances; provided, that (i) the individual sale price offered by Licensor for the Hard Copies shall not be less than the average price of the Hard Copies of the same content sold by Licensee, if any, such average price to be provided to Licensor in writing by Licensee upon request; and (ii) Licensee shall have the right to approve, not to be unreasonably withheld, the use of the names, logos, trade names and trademarks of Licensee or any of its related entities prior to any such use by Licensor in each such instance. For the avoidance of doubt, Licensor shall have the right to exploit only the Recordings sold by Licensee, in the same format(s) and form (i.e., "packaged good" audio recording units) as offered by Licensee. For the sake of clarity and the avoidance of doubt, notwithstanding this subparagraph, Licensor shall continue to have the right to distribute such units as contemplated herein. For the avoidance of doubt, no such Hard Copies shall be subject to Licensee's obligations pursuant to Paragraphs 2 and 4 hereinabove. Licensee shall have a period of sixty (60) days following receipt of Licensor's aforementioned request within which to notify Licensor whether or not Licensee shall manufacture and provide Hard Copies to Licensor.

11. **Miscellaneous**: This Agreement sets forth the entire agreement between the parties with respect to the subject matter hereof. No modification, amendment, waiver, termination or discharge of the Agreement shall be binding upon either party hereto unless confirmed by a written instrument signed by both parties hereto. This Agreement shall be deemed to have been made in the State of New York, and its validity, construction, performance and breach shall be governed by the laws of the State of New York applicable to agreements made and to be wholly performed therein. Licensee agrees to submit to the jurisdiction of the federal or state courts located in New York City in any action which may arise out of this Agreement or the subject matter thereof, and said courts shall have exclusive jurisdiction over all disputes between Licensor and Licensee pertaining to this Agreement and all matters relating thereto. In this regard, any process in any action or proceeding commenced in the courts of the State of New York arising out of any claim, dispute or disagreement under this Agreement may, among other methods, be served upon

Licensee by delivering or mailing the same, via registered or certified mail, or the functional equivalent thereof, addressed to Licensee at the address as above set forth; any such delivery or mail service shall be deemed to have the same force and effect as personal service within the State of New York.  Nothing contained herein shall constitute a waiver of any other remedies available to Licensor.  Facsimile or email PDF signatures shall be deemed originals for all purposes.

Please confirm your consent to this Agreement by signing where provided below.

| **ACCEPTED AND AGREED:** | COMEDY PARTNERS |
|---|---|
| _____ <br> MICHAEL KAPLAN | By: _____ <br> Authorized Representative |
| [Redacted] _____ <br> Social Security Number | |

635378v3

6