UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
                                      :

| | | |
|---|---|---|
| JOSEPH ZIMMERMAN, *individually and on behalf of all others similarly situated, et al.*, | : | |
| | : | |
| Plaintiffs, | : | 23-CV-2409 (VSB) |
| | : | |
| - against - | : | |
| | : | |
| PARAMOUNT GLOBAL, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| MICHAEL KAPLAN, *individually and on behalf of all others similarly situated*, | : | 22-CV-9355 (VSB) |
| | : | |
| Plaintiff, | : | **OPINION & ORDER** |
| | : | |
| - against - | : | |
| | : | |
| COMEDY PARTNERS, | : | |
| | : | |
| Defendant. | : | |

-------------------------------------------------------X

<u>Appearances</u>:

Benjamin Sweet
Nye, Stirling, Hale, Miller & Sweet, LLP
Pittsburg, PA

Scott Adam Kamber
Kamberlaw, LLC
Denver, CO
*Counsel for Plaintiffs Zimmerman, DeVito, Donnelly, and the Proposed Class*

Adrian John Buonanoce
Bobby Pouya
Daniel L. Warshaw
Pearson Warshaw, LLP
Sherman Oaks, CA

Melissa Eubanks
VGC, LLP
Beverly Hills, CA

Douglas L Johnson
Neville Lawrence Johnson
Johnson & Johnson LLP
Beverly Hills, CA
*Counsel for Plaintiff Kaplan*

Kenneth L. Steinthal
King & Spalding LLP
San Francisco, CA
*Counsel for Defendants*

<u>VERNON S. BRODERICK</u>, United States District Judge:

Plaintiffs and the Proposed Class (collectively, "Plaintiffs") in this consolidated case are recording artists whose works have been distributed on SiriusXM Radio ("SiriusXM") pursuant to licensing agreements or recording contracts (the "Recording Contracts"). Plaintiffs allege that Defendants failed to pay royalties for SiriusXM's distribution of their works that are owed under the Recording Contracts. Before me is Plaintiffs' motion for preliminary class certification and settlement approval. Because I find after a preliminary evaluation that the settlement is fair, reasonable, and the result of good faith negotiation, Plaintiffs' motion is GRANTED.

## I.    **Background**

### A.    *Factual and Procedural History*

I adopt the factual and procedural background set out in the "Factual and Procedural Background" section of the memorandum of law in support of the motion for preliminary

settlement approval and provide a summary below.  (Doc. 48 ("Mem.") 1–3.[1])  By adopting the factual and procedural background, I am not making a finding as to the veracity of the alleged facts.

In May 2021, Plaintiff Joseph Zimmerman "engaged in written communications and a document exchange with ViacomCBS's ("Viacom") Business & Legal Affairs Department."  (*Id.* at 1.)  Through these discussions, Zimmerman learned that Defendant "Comedy Partners was collecting his share of the public performance royalties from SiriusXM via a direct licensing agreement with SiriusXM.  The direct license limited Zimmerman's ability to collect his royalty share through SoundExchange, the statutorily created collection agency that would have otherwise collected and paid Zimmerman for his share of the public performance royalties."  (*Id.* (citing 17 U.S.C. §§ 112, 114)).  Comedy Partners did not meet Zimmerman's demand for royalty payments.  (*Id.*)  On August 26, 2022, Zimmerman and Plaintiffs Anthony DeVito and Sean Donnelly, all fellow comedians, filed "copyright applications with the Library of Congress in order to perfect and pursue their rights."  (*Id.*).

Meanwhile, Plaintiff Michael Kaplan, another comedian, also learned that he did not receive royalties for SiriusXM's distributions of his works.  (*Id.*)  On November 1, 2022, Kaplan filed a putative class action (the "*Kaplan* action") against Defendant Comedy Partners before this Court.[2]  *See Kaplan v. Comedy Partners*, No. 22-CV-9355 (S.D.N.Y. filed Nov. 1, 2022).  Kaplan asserted claims for "(1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) money had and received; and (4) unjust enrichment, based on Comedy Partners'

---

[1] Unless otherwise noted, record citations refer to *Zimmerman v. Paramount Global*, No. 23-CV-2409 (S.D.N.Y. filed Mar. 21, 2023).

[2] The *Kaplan* action was originally assigned to Judge John G. Koeltl and was reassigned to Judge Dale Ho on May 2, 2024.

alleged failure to pay royalties owed to artists with whom it had Recording Contracts and whose
works have been distributed via digital audio transmission on SiriusXM pursuant to such
Recording Contracts."  (Mem. 1–2.)

On March 21, 2023, Plaintiffs Zimmerman, DeVito, and Donnelly filed a separate
putative class action (the "*Zimmerman* action") related to the royalty payments.  (*See* Doc. 1.)
The Plaintiffs in the *Zimmerman* action asserted the same four claims as the *Kaplan* action
against Defendants Paramount Global, Comedy Partners, and Does 1–10.  (Mem. 3.)  The
*Zimmerman* Plaintiffs also asserted "additional causes of action for (1) declaratory judgment
regarding violations of [the Copyright Act], 17 U.S.C. §§ 106(6), 114(g)(2)(D); (2) direct
violation of [the Copyright Act], 17 U.S.C. §§ 106(6), 114(g)(2)(D); (3) breach of fiduciary duty;
and (4) accounting [of damages]."  (*Id*.)  The *Zimmerman* Plaintiffs sought, *inter alia*, "copyright
damages for willful infringement based on Zimmerman's prior 2021" unmet demand to Comedy
Partners "for public performance royalties."  (*Id*.)

On May 18, 2023, Defendants submitted a letter in the *Zimmerman* and *Kaplan* actions
informing the Court that the parties to each proceeding "believe that joint mediation proceedings
may facilitate early resolution of both actions."  (Doc. 20; *Kaplan* Doc. 31.)  The letter also noted
that the *Kaplan* plaintiffs had "engaged in preliminary settlement discussions and data
exchanges" since the filing of that action.  (*Id*.)  On August 16, 2023, the parties notified the
Court that they had scheduled a joint mediation session before the Honorable Louis Meisinger
for September 19, 2023.  (Doc. 22.)  The parties reached a settlement-in-principle during the
mediation, and scheduled a second mediation in order to finalize the settlement terms.  (*See* Doc.
30.)  On May 21, 2024, I granted the parties' joint motions to consolidate the *Zimmerman* and

*Kaplan* actions pursuant to Federal Rule of Civil Procedure 42(a) in anticipation of the parties'

motion for preliminary settlement approval.  (*See* Doc. 37.)

On August 29, 2024, the parties submitted a joint motion for preliminary approval of their

class action settlement, (Doc. 47), a supporting memorandum of law, (Doc. 48 ("Mem"), and

supporting declarations of Daniel L. Warshaw, (Doc. 49 ("Warshaw Decl.")), Neville L. Johnson,

(Doc. 50 ("Johnson Decl.")), Cameron R. Azari, (Doc. 52 ("Azari Decl.")), Benjamin J. Sweet,

(Doc. 54 ("Sweet Decl.")), Plaintiff Kaplan, (Doc. 51 ("Kaplan Decl.")), Plaintiff DeVito, (Doc.

55 ("DeVito Decl.")), Plaintiff Donnelly, (Doc. 56 ("Donnelly Decl.")), and Plaintiff

Zimmerman, (Doc. 57 ("Zimmerman Decl.")).  The parties' Settlement Agreement is attached as

an exhibit to the Warshaw Declaration.  (*See* Doc. 49-1 ("Settlement Agreement").)

### B.    Summary of Settlement Agreement

The Settlement Agreement includes a single Settlement Class, defined as:

> All persons and entities, their agents, successors in interest, affiliates, assigns, heirs,
> executors, trustees, and administrators who are or were parties to Recording
> Contracts with Comedy Partners whose works have been distributed by digital
> audio transmission via SiriusXM Radio pursuant to such Recording Contracts
> between May 19, 2013, up to and including December 31, 2022 [(the "Class
> Period")].

(Settlement Agreement ¶ 2(a).)  Upon the Court's final settlement approval, the Agreement

provides that Defendants will pay a total of $11,000,000 into a settlement fund, which covers

"(1) the Class Settlement Payments, (2) any amounts needed to satisfy (a) any award of

Attorneys' Fees and Expenses, (b) any Incentive Award, and (c) all Notice and Administration

Costs."  (*Id*. ¶ 4.)  Each Class Member who does not opt out of the Settlement Class will receive

a pro rata share of the Net Settlement Sum "equal to the total number of plays of the individual

Class Member's Recordings, compared to the total number of plays of all Class Member

Recordings (in the aggregate) via the SiriusXM Radio platform during the [Class Period]."  (*Id.* ¶ 1(g); *see also id.* ¶ 4(a)(i).)

## II.  **Legal Standard**

### A.  *Preliminary Settlement Approval*

It is within a district court's discretion to approve proposed class action settlements.  *See Kelen v. World Fin. Network Nat'l Bank*, 302 F.R.D. 56, 68 (S.D.N.Y. 2014) (citing *Maywalt v. Parker & Parsley Petroleum Co.*, 67 F.3d 1072, 1078 (2d Cir. 1995)).  "The compromise of complex litigation is encouraged by the courts and favored by public policy."  *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:41, at 87 (4th ed. 2002)), *superseded by* Fed. R. Civ. P. 23(e)(2), *as recognized in Moses v. New York Times Co.*, 79 F.4th 235, 243 (2d Cir. 2023).  The parties and their counsel are in a unique position to assess the potential risks of litigation, and thus district courts in exercising their discretion often give weight to the fact that the parties have chosen to settle.  *See Yuzary v. HSBC Bank USA, N.A.*, No. 12-CV-3693, 2013 WL 1832181, at *1 (S.D.N.Y. Apr. 30, 2013) (citation omitted).

Federal Rule of Civil Procedure 23(e) requires judicial approval of any class action settlement.  Review of a proposed settlement generally involves preliminary approval followed by a fairness hearing.  *See Silver v. 31 Great Jones Rest.*, No. 11-CV-7442, 2013 WL 208918, at *1 (S.D.N.Y. Jan. 4, 2013).  "[C]ourts often grant preliminary settlement approval without requiring a hearing or a court appearance."  *Lizondro-Garcia v. Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (citation omitted).  However, "[e]ven at the preliminary approval stage, the Court's role in reviewing the proposed settlement 'is demanding because the adversariness of litigation is often lost after the agreement to settle.'"  *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (quoting *Zink v. First Niagara Bank, N.A.*, 155 F. Supp. 3d

297, 308 (W.D.N.Y. 2016)). Thus, a district court must consider whether the court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (quoting Fed. R. Civ. P. 23(e)(1)(B)(i)–(ii)) (emphasis omitted); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692 (same). Courts conducting this analysis "must make a preliminary evaluation as to whether the settlement is fair, reasonable and adequate." *In re Currency Conversion Fee Antitrust Litig.*, No. 01-MD-1409, M-21-95, 2006 WL 3247396, at *5 (S.D.N.Y. Nov. 8, 2006) (internal quotation marks omitted). In making this determination, courts consider the (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2)(A)–(D). In addition to these four factors, courts in this Circuit also consider whether the settlement is fair, reasonable, and adequate based on the nine factors[3] established in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974),[4] which partially overlap with the factors in Rule 23(e)(2)(C)–(D).

### B.    Conditional Settlement Class Certification and Appointment of Class Counsel

Conditional settlement class certification and the appointment of class counsel have several practical purposes "including avoiding the costs of litigating class status while facilitating a global settlement, ensuring notification of all class members of the terms of the proposed

---

[3] The *Grinnell* factors are: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Grinnell*, 495 F.2d at 463.

[4] The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace the "*Grinnell*" factors. *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment, subdiv. (e)(2)).

settlement agreement, and setting the date and time of the final approval hearing." *Almonte v. Marina Ice Cream Corp.*, No. 16-CV-660, 2016 WL 7217258, at *2 (S.D.N.Y. Dec. 8, 2016) (citing *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 790–92 (3d Cir. 1995)). A proposed settlement class must meet the requirements of Rule 23(a) and (b)(3). Under Rule 23(a), class certification is appropriate if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims . . . of the representative parties are typical of the claims . . . of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(1)–(4). "The party seeking class certification bears the burden of establishing each of these elements by a 'preponderance of the evidence.'" *Lizondro-Garcia*, 300 F.R.D. at 174 (quoting *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008)). Once each of these four threshold requirements are met, "class certification is appropriate if the action also satisfies one of the three alternative criteria set forth in Rule 23(b)." *Id.* To certify a class under Rule 23(b)(3), as the parties seek to do here, a court must also find "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

III.    **Discussion**

A.    ***Preliminary Approval of Class Settlement***

Based on the materials Plaintiffs have submitted and for the reasons outlined below, I find that the settlement merits preliminary approval.

1. **Adequacy of Representation**

"Determination of adequacy typically entails inquiry as to whether: (1) plaintiff's interests are antagonistic to the interest of other members of the class and (2) plaintiff's attorneys

are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin. Servs. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks omitted).

Here, Plaintiffs' interests are not antagonistic to the interest of the other class members; rather, Plaintiffs and unnamed class members alike each suffered the same injury—Defendants' use of their works on SiriusXM without paying royalties. Although each Class Member will receive a different amount, the variations in payments bear a direct, pro rata relationship to the variations in out-of-pocket damages sustained by each class member based on the number of times SiriusXM played their works without royalty compensation.

Plaintiffs' attorneys have also demonstrated the necessary qualifications and skill in this matter through their prior results and experience. (*See* Mem. 15; Warshaw Decl. ¶¶ 9–15; Johnson Decl. ¶¶ 4–5; Sweet Decl. ¶¶ 3–11.) Plaintiffs' counsel has also demonstrated their skill through their work on this case, which involved substantial negotiation and discovery and resulted in a successful mediated settlement. (*See* Sweet Decl. ¶¶ 12–17.) Therefore, Rule 23(e)(2)(A)'s adequacy of representation prong weighs in favor of approval.

## 2. Existence of Arm's-Length Negotiations

The existence of arm's-length negotiations further counsels in favor of approving the settlement on a preliminary basis. Rule 23(e)(2)(B) requires a court to consider whether a proposed settlement "was negotiated at arm's length." Here, counsel for Plaintiffs engaged in an eighteen-month settlement negotiation process following pre-litigation negotiation and discovery; the parties' negotiations during the litigation involved using a mediator, discovery related to Defendants' use of Plaintiffs' works and Plaintiffs' retention of "professional auditors as litigation consultants to assist in the evaluation of the case and the Settlement before it was finalized." (Mem. 7.) Given this work, the parties had a full opportunity to acquaint themselves with the strength of the case prior to and over the course of their negotiations. The parties were

represented by experienced counsel who were then aided in their negotiations—as noted—by an experienced, privately retained mediator.  (*Id*. 6–7.)  "Courts have [] recognized a presumption of fairness when a settlement is reached with the assistance of a mediator."  *Lea v. Tal Educ. Grp.*, No. 18-CV-5480, 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) (citing *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014)); *cf. id.* (applying presumption of fairness to a settlement reached with the assistance of a privately retained mediator).  The mediator assisted the parties in arriving at a settlement-in-principle and finalizing the Settlement Agreement.  All of this strongly suggests that the Settlement is the result of good faith arm's-length negotiations.  *See In re Namenda Direct Purchaser Antitrust Litig.*, 462 F. Supp. 3d 307, 311 (S.D.N.Y. 2020) (approving settlement where parties engaged in substantive mediation and experienced counsel reached an agreement after arm's-length negotiations)

### 3.  Adequacy of Relief

In assessing the adequacy of a settlement under Rule 23(e)(2)(C)(i), "courts may need to forecast the likely range of possible classwide recoveries and the likelihood of success in obtaining such results."  *In re Payment Card*, 330 F.R.D. at 36 (quoting Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment).  This inquiry overlaps with the *Grinnell* factors of "complexity, expense, and likely duration of the litigation" along with "the risks of establishing liability," "the risks of establishing damages," and "the risks of maintaining the class action through the trial."  *See Grinnell*, 495 F.2d at 463.

The risks in this action including the procedural complexity of two parallel actions, the intricacies of interpreting each Plaintiff's Recording Contract, and the substantial time it would take for Plaintiffs to litigate this case through any motions to dismiss, class certification,

summary judgment, and trial.  (Mem. 8.)  These considerations weigh in favor of preliminary approval.

Under Rule 23(e)(2)(C)(ii), a court must evaluate the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding."  *Tal Educ. Grp.*, 2021 WL 5578665, at *11 (internal quotation marks omitted).  "When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) (internal quotation marks omitted).

Here, the distribution plan here has been formulated by experienced counsel and is being overseen by Epiq Class Action and Claims Solutions, Inc. ("Epiq"), an experienced claims administrator.  (*See* Azari Decl. ¶¶ 2–4.)  Because of discovery exchanged during settlement negotiations, within 30 days of this Court's preliminary approval of the Settlement Agreement each Class Member will receive a notice via email and/or first-class mail informing them of the substantive terms of the Agreement, advising them of their options to object or opt-out, and explaining how to receive additional information about the settlement.  (Mem. 18–19.)  Having reviewed the proposed notices, (Docs. 52-2–52-4), I find that they are adequate and pose little risk that the distribution process unduly demanding or unable to filter out unjustified claims.  Therefore, I find that this plan is fair, reasonable, and adequate.

In assessing the adequacy of the relief, Rule 23 also requires the court to examine the proposed attorneys' fees.  Fed. R. Civ. P. 23(e)(2)(C)(iii).  The parties do not discuss the amount of attorneys' fees they intend to request in their memorandum of law, stating that the Settlement

Agreement "is not contingent upon the approval of attorneys' fees" and that the "Court will separately and independently determine the appropriate amount of fees, costs, and expenses to award to Class Counsel." (Mem. 6.) However, the proposed notice of settlement indicates that any request for attorneys' fees will be for "up to $3,666,666.66 of the $11 million Settlement Fund, and up to $100,000.00 in costs and expenses." (Doc. 52-2 at 3.) "[A]n application for a fee award of an amount not to exceed one-third of the" Settlement Fund, "plus reasonable out-of-pocket costs . . . is consistent with what other courts in this District have approved." *Grissom v. Sterling Infosystems, Inc.*, No. 20-CV-7948, 2024 WL 4627567, at *5 (S.D.N.Y. Oct. 30, 2024) (citing *Suarez v. Rosa Mexicano Brands Inc.*, No. 16-CV-5464, 2018 WL 1801319, at *1 (S.D.N.Y. Apr. 13, 2018); *Zorrilla v. Carlson Rests., Inc.*, No. 14-CV-2740, 2018 WL 1737139, at *2 (S.D.N.Y. Apr. 9, 2018)). Thus, I find for purposes of preliminary approval that the anticipated attorneys' fee request appears reasonable, subject to final approval.

Finally, a court must consider "any agreement required to be identified under Rule 23(e)(3)," Fed. R. Civ. P. 23(e)(2)(C)(iv), which includes "any agreement made in connection with the proposal," Fed. R. Civ. P. 23(e)(3). The parties have identified no prior separate agreement, and the proposed Settlement Agreement "constitutes the entire agreement between the Parties." (Settlement Agreement ¶ 27.) This consideration does not weigh against preliminary settlement approval.

### 4. Equitable Treatment of Class Members

Rule 23(e)(2)(D) requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). The Settlement Agreement's pro rata distribution scheme is sufficient evidence of equitable treatment in this regard. *See In re Payment Card*, 330 F.R.D. at 47 (finding that a "*pro rata* distribution scheme is sufficiently equitable").

12

As part of this factor, I must also consider the incentive payments proposed in the Agreement. "Rule 23(e)(2)(D) does not forbid incentive awards." *Moses*, 79 F.4th at 245. "At the same time, the rule requires that courts reject incentive awards that are excessive compared to the service provided by the class representative or that are unfair to the absent class members." *Id.* The parties have proposed a service award to each of the four named Plaintiffs—Zimmerman, Kaplan, DeVito, and Donnelly—that is not to exceed $5,000. (Settlement Agreement ¶ 13.) This award is within the range of service awards approved by courts in this District given counsel's representation regarding the contributions of the named Plaintiffs to this case.[5] (*See* Zimmerman Decl. ¶¶ 5–6, 8; Kaplan Decl. ¶¶ 4–6; DeVito Decl. ¶¶ 5–6, 8; Donnelly Decl. ¶¶ 5–6, 8.) Thus, the incentive awards are reasonable in light of the particular circumstances of this case.

### 5. Remaining *Grinnell* Factors

The *Grinnell* factors not expressly assessed under Rule 23(e)(2) include "[] the reaction of the class to the settlement; [] the stage of the proceedings and the amount of discovery completed; . . . [] the ability of the defendants to withstand a greater judgment; [] the range of reasonableness of the settlement fund in light of the best possible recovery; and [] the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell*, 495 F.2d at 463.

All five of these *Grinnell* factors favor preliminary approval. First, the named Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued. *See, e.g.*, *Sonterra Cap. Master Fund, Ltd. v. Barclays Bank PLC*,

---

[5] "Awards on an individualized basis have generally ranged from $2,500 to $85,000." *Hart v. BHH, LLC*, No. 15-CV-4804, 2020 WL 5645984, at *5 (S.D.N.Y. Sept. 22, 2020) (citation omitted).

No. 15-cv-3538, 2023 WL 3749996, at *5 (S.D.N.Y. June 1, 2023) ("[T]he Representative Plaintiffs favor the Settlement, and their approval is probative of the Class's reaction at this time since notice has not yet been issued.")  Second, through pre-litigation negotiations and extensive discussion with counsel before, during, and after the mediation, the named Plaintiffs have "obtained a sufficient understanding of the case to gauge the strengths and weaknesses of [their] claims and the adequacy of the settlement."  *In re AOL Time Warner, Inc.*, No. 02-CV-5575, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006).  I note that because the underlying claims involve the named Plaintiffs' livelihoods, they are acutely aware of the issues at stake, as shown by Plaintiff Zimmerman's decision to initiate direct negotiations with Viacom prior to the filing of this lawsuit.  (*See* Mem. 2.)  Third, the fact that Defendants could potentially withstand a greater judgment "does not, standing alone, indicate that the settlement is unreasonable or inadequate."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (internal quotation marks omitted).  Finally, in considering the settlement in light of the best possible recovery and the risks of litigation, the Settlement Agreement provides adequate recovery for the class, of which each member will receive a substantial pro rata payment from the common fund, which represents "more than 68% of the total unpaid royalties (*i.e.*, damages) that Plaintiffs and their consultant auditors calculated were owed to the Class"; the total unpaid royalties "approximated $16 million."  (Mem 11.)  Given the litigation risks already discussed, this is a reasonable and adequate settlement.

### B.    *Conditional Class Certification*

Plaintiffs have met the requirements for a class set out by Rule 23(a)(1)–(4).  The class is sufficiently numerous because, according to the parties' estimate, it consists of approximately 120 members.  (Mem. 13.)  Common issues predominate across the class because each of Plaintiff's harms stems from Defendants' alleged failure to pay royalties for SiriusXM

distribution.  Plaintiffs' claims are typical of the class because their claims, like all class members, arise out of these factual and legal circumstances.  The adequacy requirements are met both because Plaintiffs' interests are not antagonistic to those of the class and because, as discussed above, their attorneys have sufficient skill and experience to competently represent the class and have achieved a sound result.  Because the class certification request is made in the context of settlement only, I need not address the issue of manageability.  *See Soler v. Fresh Direct, LLC*, No. 20-CV-3431, 2023 WL 2492977, at *6 (S.D.N.Y. Mar. 14, 2023) (certifying "settlement class for the purposes of settlement, notice, and award distribution only").

Furthermore, the predominance and superiority requirements of Rule 23(b)(3) are satisfied because the common legal and factual issues already discussed "predominate over any questions affecting only individual members" and a class action is a superior method of resolving these issues.  Fed. R. Civ. P. 23(b)(3).

## IV.    <u>Conclusion</u>

For the foregoing reasons, Plaintiffs' unopposed motion for preliminary approval of the settlement is GRANTED on the terms set out in the Order re Preliminary Approval of Settlement Agreement, Certification of Settlement Class, Appointment of Class Counsel, and Appointment of Class Representatives that will issue in conjunction with this Opinion & Order.  The Court will hold a final fairness hearing on Tuesday, July 22, 2025 at Thurgood Marshall U.S. Courthouse, 40 Foley Square, New York, NY, at 10:00am in Courtroom 518.

Accordingly, it is hereby:

ORDERED that, pending the Final Approval Hearing, all deadlines in this action save those set out in this Opinion & Order and in the Order re Preliminary Approval of Settlement Agreement, Certification of Settlement Class, Appointment of Class Counsel, and Appointment of Class Representatives, for the purpose of executing the Settlement Agreement are stayed.

IT IS FURTHER ORDERED that counsel for all parties shall appear for a telephonic conference in this matter on April 4, 2025 at 2:00pm.  The dial-in number is 1-855-244-8681 and the access code is 2309 3085 835.  There is no attendee ID.

IT IS FURTHER ORDERED that I shall retain jurisdiction over this action to consider all further matters arising out of or connected with the Settlement Agreement.

The Clerk of Court is respectfully directed to close the motion at Doc. 47 in No. 23-CV-2409.

SO ORDERED.

Dated: March 11, 2025
  New York, New York

              Vernon S. Broderick
              United States District Judge